UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ESTATE OF F.R. Jr. and
LORI ROSILES,

         Plaintiffs,

    v.

COUNTY OF YUBA, YUBA COUNTY
SHERIFF'S OFFICE, and DOES 1 to
10,

         Defendants.

No. 2:23-cv-00846 WBS CKD

MEMORANDUM AND ORDER RE:
DEFENDANTS' MOTION TO DISMISS

----oo0oo----

        Plaintiffs Estate of F.R. Jr. and Lori Rosiles brought
this action against plaintiffs County of Yuba, Yuba County
Sheriff's Office, and Does 1 through 10 in connection with F.R.'s
death.  The complaint asserts the following claims: (1) violation
of the Fourteenth Amendment under the state-created danger rule;
(2) violation of the Fourteenth Amendment under the special
relationship exception; (3) unreasonable post-seizure care under
the Fourth Amendment; (4) violation of Section 504 of the

1

1    Rehabilitation Act; (5) violation of the Americans with

2    Disabilities Act; (6) interference with familial association

3    under the Fourteenth Amendment; (7) interference with familial

4    association under the First Amendment; (8) unreasonable post-

5    seizure care under Article I, § 13 of the California

6    Constitution; (9) violation of the Tom Bane Civil Rights Act;

7    (10) intentional infliction of emotional distress; (11)

8    negligence; and (12) wrongful death.  (Compl. (Docket No. 1.)

9    Defendants now move to dismiss the complaint in its entirety.

10   (Docket No. 7.)

11   I.   Factual Background[1]

12         During the evening of February 5, 2021, 10-year-old

13   F.R. was inside his relatives' residence in Olivehurst,

14   California.  (Compl. ¶¶ 15-16.)  F.R. was shot in the abdomen

15   with a bullet.  (Id. ¶ 17.)  F.R.'s relatives called 9-1-1 and

16   the dispatcher informed them than an ambulance would be

17   dispatched.  (Id. ¶ 19.)  While waiting for the ambulance, F.R.'s

18   relatives prepared a vehicle to take F.R. to the hospital.  (Id.

19   ¶ 20.)  When the ambulance did not arrive after a "short while,"

20   F.R.'s relatives placed him into the backseat of a pickup truck

21   to be transported to the hospital.  (Id. ¶ 21.)

22         As the vehicle was about to depart, several patrol

23   vehicles occupied by Yuba County Sheriff's Office deputies

24   arrived at the residence.  (Id. ¶ 22.)  The patrol vehicles

25   surrounded the truck and prevented the truck from departing to

26   the hospital.  (Id. ¶ 23.)  The officers pointed firearms at the

27   _____

28         [1]  All facts recited herein are as alleged in the
      Complaint unless otherwise noted.

1  driver of the truck and dragged F.R. from the truck, laying him

2  on the ground in a puddle of water.  (Id. ¶¶ 25, 28.)  F.R.'s

3  relatives pleaded with the officers to allow F.R. to be

4  transported in the truck to the hospital, which the officers

5  ignored.  (Id. ¶¶ 26-27.)  The officers prevented F.R.'s

6  relatives from approaching F.R.  (Id. ¶ 32.)  F.R.'s mother, Lori

7  Rosiles, arrived at the residence during the incident and was

8  similarly prevented from approaching F.R.  (Id. ¶ 34.) The

9  officers did not provide any emergency medical assistance and

10  prevented anyone else at the scene from rendering assistance.

11  (Id. ¶¶ 31-32.)

12        F.R. lay on the ground for at least fifteen minutes

13  before the ambulance arrived.  (Id. ¶ 35.)  F.R. was later

14  pronounced dead.  (Id. ¶ 39.)

15  II.  Legal Standard

16        Federal Rule of Civil Procedure 12(b)(6) allows for

17  dismissal when a complaint fails to state a claim upon which

18  relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  "A Rule

19  12(b)(6) motion tests the legal sufficiency of a claim."  Navarro

20  v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  The inquiry before

21  the court is whether, accepting the allegations in the complaint

22  as true and drawing all reasonable inferences in the plaintiff's

23  favor, the complaint has alleged "sufficient facts . . . to

24  support a cognizable legal theory," id., and thereby stated "a

25  claim to relief that is plausible on its face," Bell Atl. Corp.

26  v. Twombly, 550 U.S. 544, 570 (2007).

27  III.  Civil Rights Claims

28        A.   State-Created Danger (First Claim)

3

1          Under the state-created danger rule, state actors may
2     be held liable under § 1983 where (1) "'affirmative conduct on
3     the part of a state actor places a plaintiff in danger,'" and (2)
4     the state actor "acts with 'deliberate indifference' to a 'known
5     or obvious danger'" to the plaintiff's safety.  Murguia v.
6     Langdon, 61 F.4th 1096, 1111 (9th Cir. 2023) (quoting Penilla v.
7     City of Huntington Park, 115 F.3d 707, 710 (9th Cir. 1997); Patel
8     v. Kent Sch. Dist., 648 F.3d 965, 974 (9th Cir. 2011)).

9          "To satisfy the first requirement, a plaintiff 'must
10    show that the officers' affirmative actions created or exposed
11    him to an actual, particularized danger that he would not
12    otherwise have faced.'"  Murguia, 61 F.4th at 1111 (quoting
13    Martinez v. City of Clovis, 943 F.3d 1260, 1271 (9th Cir. 2019))
14    (alterations adopted).  "'In examining whether an officer
15    affirmatively places an individual in danger, we do not look
16    solely to the agency of the individual, nor do we rest our
17    opinion on what options may or may not have been available to the
18    individual.  Instead, we examine whether the officers left the
19    person in a situation that was more dangerous than the one in
20    which they found him.'"  Id. (quoting Munger v. City of Glasgow
21    Police Dep't, 227 F.3d 1082, 1086 (9th Cir. 2000)).  "'The
22    critical distinction is not . . . an indeterminate line between
23    danger creation and enhancement, but rather the stark one between
24    state action and inaction in placing an individual at risk.'"
25    Id. (quoting Penilla, 115 F.3d at 710).  "Furthermore, the
26    plaintiff's ultimate injury must have been foreseeable to the
27    defendant."  Id. (citing Martinez, 943 F.3d at 1273).  "'This
28    does not mean that the exact injury must be foreseeable.  Rather,

4

1  the state actor is liable for creating the foreseeable danger of

2  injury given the particular circumstances.'" Id. (quoting

3  Martinez, 943 F.3d at 1273-74) (internal quotation marks

4  omitted).

5        Here, plaintiffs allege that defendants prevented

6  F.R.'s family members from either rendering medical aid or

7  transporting him to the hospital.  This constitutes not a mere

8  omission, but affirmative conduct that left F.R. "in a situation

9  that [is] more dangerous than the one in which they found him."

10 See Munger, 227 F.3d at 1086.  As the Ninth Circuit has held,

11 where officers find a plaintiff "facing a preexisting danger from

12 [a] gunshot wound," "[i]mpeding access to medical care amounts to

13 leaving [the plaintiff] in a more dangerous situation." Maxwell

14 v. County of San Diego, 708 F.3d 1075, 1082 (9th Cir. 2013). See

15 also Murguia, 61 F.4th at 1112 ("This court and other circuits

16 have applied the state-created danger exception in situations

17 where an officer abandoned the plaintiff in a dangerous

18 situation, separated the plaintiff from a third-party who may

19 have offered assistance, or prevented other individuals from

20 rendering assistance to the plaintiff.")

21       The potential injury from an untreated gunshot wound is

22 "objectively foreseeable as a matter of common sense." See

23 Murguia, 61 F.4th at 1115-16.  As the Ninth Circuit has held, the

24 potential harm from "delaying a bleeding gun shot victim's

25 [medical care]" is so "obvious" that such conduct demonstrates

26 deliberate indifference.  See Maxwell, 708 F.3d at 1083.

27       Because plaintiffs have sufficiently alleged that

28 defendants affirmatively placed F.R. in danger with deliberate

1   indifference to his safety, the court concludes that plaintiffs

2   have stated a claim under the state-created danger rule.

3   Accordingly, the court will deny the motion to dismiss the first

4   claim under the Fourteenth Amendment.

5        B.   Special Relationship (Second Claim)

6            "The Fourteenth Amendment's Due Process Clause

7   generally does not confer any affirmative right to governmental

8   aid, even where such aid may be necessary to secure life,

9   liberty, or property interests." Patel, 648 F.3d at 971.

10  However, under the "special relationship" exception, state actors

11  may be held liable for their omissions where they "'take[] a

12  person into [their] custody and hold[] him there against his

13  will.'" Id. at 971-72 (quoting Deshaney v. Winnebago Cnty. Dep't

14  of Soc. Servs., 489 U.S. 189, 199-200 (1989)). This exception

15  exists because "a state cannot restrain a person's liberty

16  without also assuming some responsibility for the person's safety

17  and well-being." Id. at 972.

18           Defendants argue that F.R. was never placed into state

19  custody. "'[C]ustody' for the purposes of the special-

20  relationship exception is a restriction on the plaintiff's

21  liberty that limits the ability of the plaintiff (or the

22  plaintiff's parents) to meet the plaintiff's basic needs (e.g.,

23  incarceration, institutionalization, foster care)." Murguia, 61

24  F.4th at 1110.

25           Here, the officers removed F.R. from his relative's

26  vehicle and prevented his relatives from even approaching him,

27  let alone attending to his needs. In doing so, the officers held

28  him in custody such that the special relationship exception was

                                  6

triggered.  See A.H. v. County of Tehama, No. 2:18-cv-02917 TLN DMC, 2020 WL 4474909, at *7 (E.D. Cal. Aug. 4, 2020) (plaintiffs stated a special relationship claim where they alleged that officers temporarily prevented them from "leav[ing] and seek[ing] medical help").  Cf. Murguia, 61 F.4th at 1110 (children were not in state custody for purposes of special relationship exception where they were with one parent at all times).

Accordingly, the court will deny the motion to dismiss the second claim under the special relationship exception.

C.   Unreasonable Post-Seizure Care (Third Claim)

Under the Fourth Amendment, "[o]fficers must provide objectively reasonable post-arrest care" to an individual in police custody.  Rosales v. County of San Diego, 511 F. Supp. 3d 1070, 1091 (S.D. Cal. 2021) (citing Tatum v. City & County of San Francisco, 441 F.3d 1090, 1098 (9th Cir. 2006)).  "The Ninth Circuit has not precisely defined the contours of what it means to provide 'objectively reasonable post-arrest care.'"  Henriquez v. City of Bell, 14-cv-196 GW SS, 2015 WL 13357606, at *6 (C.D. Cal. Apr. 16, 2015).  "However, the Fourth Amendment analysis generally concerns whether the defendant's conduct was reasonable under the totality of the circumstances, viewed from the perspective of a reasonable person on the scene."  Rosales, 511 F. Supp. 3d at 1091 (citing Plumhoff v. Rickard, 572 U.S. 765, 774-75 (2014); Tatum, 441 F.3d at 1098).

The leading Ninth Circuit case on this issue is Tatum v. City & County of San Francisco, 441 F.3d at 1098.  Tatum involved a plaintiff who died of cocaine toxicity following his arrest.  Id. at 1093.  The Ninth Circuit concluded that the

arresting officers had provided objectively reasonable post-arrest care where they "promptly summon[ed] the necessary medical assistance" upon noticing the plaintiff's breathing was labored, continuously monitored the plaintiff's medical condition by checking his breathing and pulse, and upon realizing that the plaintiff's condition was deteriorating, contacted dispatch again to request that the ambulance be given priority.  Id. at 1093, 1099.

Defendants argue that, as in Tatum, an ambulance arrived to take F.R. to the hospital, and accordingly the officers complied with the Fourth Amendment.  See id. at 1099 ("the officers promptly requested medical assistance, and the Constitution required them to do no more").  However, this case is factually distinguishable from Tatum in multiple ways.  First, it is not clear from the complaint that the officers involved did call for assistance at all.  By the time the officers arrived, F.R.'s family had contacted emergency services and an ambulance had already been dispatched.  (See Compl. ¶¶ 19-22.)  Second, there are no allegations suggesting that the officers took steps to monitor F.R.'s medical condition.  (See generally Compl.) Third, and perhaps most importantly, the officers did more than merely wait for emergency services to arrive; rather, they allegedly prevented F.R.'s family from either approaching him to check his condition and render medical assistance or transporting him to the hospital.  (See Compl. ¶¶ 24, 26-27, 32.)

On the facts as alleged, a reasonable finder of fact could conclude that the officers' actions in preventing F.R. from accessing medical assistance from third parties was unreasonable

8

1   under the circumstances.  See Rosales, 511 F. Supp. 3d at 1092

2   ("obstructing paramedics in an ambulance by attempting to

3   handcuff an unconscious arrestee suffering a cardiac arrest is

4   objectively unreasonable post-arrest care"); Ochoa v. City of San

5   Jose, No. 21-cv-02456 BLF, 2021 WL 7627630, at *11 (N.D. Cal.

6   Nov. 17, 2021) (denying motion to dismiss post-arrest medical

7   care claim where plaintiff alleged that officers delayed access

8   to medical care without a valid law enforcement purpose); Ostling

9   v. City of Bainbridge Island, 872 F. Supp. 2d 1117, 1129-30 (W.D.

10  Wash. 2012) (concluding that where plaintiff suffering from

11  gunshot wound alleged that the defendant officers prevented

12  plaintiff's father from checking on his condition, "a reasonable

13  factfinder could conclude that [the officers'] restriction of

14  medical aid was unreasonable and led to [the plaintiff's]

15  death").

16       Defendants also argue that the officers had no

17  obligation to provide reasonable post-seizure care under the

18  Fourth Amendment because F.R. was not injured while being

19  apprehended.  However, in Tatum, the Ninth Circuit found that the

20  officers were under such an obligation, despite the plaintiff's

21  drug-related death not having been caused by the circumstances of

22  the arrest.  See 441 F.3d at 1092-93.  That F.R.'s gunshot wound

23  was unrelated to the circumstances of his seizure thus does not

24  alter the outcome here.

25       Accordingly, the court concludes that plaintiffs have

26  stated a claim for unreasonable post-seizure care and will deny

27  the motion to dismiss the third claim under the Fourth Amendment.

28

1      D.   Rehabilitation Act and Americans with Disabilities Act
            (Fourth and Fifth Claims)
2

3          "Title II of the ADA prohibits public entities from

4   discriminating on the basis of disability.  Section 504 [of the

5   Rehabilitation Act] similarly prohibits disability discrimination

6   by recipients of federal funds."  Payan v. Los Angeles Cmty.

7   Coll. Dist., 11 F.4th 729, 737 (9th Cir. 2021) (citing 42 U.S.C.

8   § 12132; 29 U.S.C. § 794).  "The two laws are interpreted

9   coextensively because 'there is no significant difference in the

10  analysis of rights and obligations created by the two Acts.'"

11  Id. (quoting K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,

12  725 F.3d 1088, 1098 (9th Cir. 2013)).

13         To state a claim for disability discrimination, "the

14  plaintiff must allege four elements: (1) the plaintiff is an

15  individual with a disability; (2) the plaintiff is otherwise

16  qualified to participate in or receive the benefit of some public

17  entity's services, programs, or activities; (3) the plaintiff was

18  either excluded from participation in or denied the benefits of

19  the public entity's services, programs, or activities, or was

20  otherwise discriminated against by the public entity; and (4)

21  such exclusion, denial of benefits, or discrimination was by

22  reason of the plaintiff's disability."  Thompson v. Davis, 295

23  F.3d 890, 895 (9th Cir. 2002).

24         In support of their disability discrimination claims,

25  plaintiffs allege that defendants impeded F.R.'s access to

26  medical care.  However, such allegations cannot form the basis

27  for a disability discrimination claim because the ADA and Section

28  504 "prohibit[] discrimination because of disability, not

10

1    inadequate treatment for disability." See Simmons v. Navajo

2    County, 609 F.3d 1011, 1022 (9th Cir. 2010), overruled on other

3    grounds by Castro v. County of Los Angeles, 833 F.3d 1060 (9th

4    Cir. 2016) (en banc). See also Wilkey v. County of Orange, 295

5    F. Supp. 3d 1086, 1093 (C.D. Cal. 2017) (allegations that

6    defendants denied access to medical care cannot support claim for

7    disability discrimination); Brown v. Brown, No. 1:14-cv-01184

8    LJO, 2015 WL 2374284, at *6 (E.D. Cal. May 18, 2015) ("the

9    treatment, or lack of treatment, concerning Plaintiff's medical

10   conditions does not provide a basis upon which to impose

11   liability under the ADA").

12        Accordingly, the court will dismiss the fourth and

13   fifth claims for disability discrimination under Section 504 and

14   the ADA in their entirety.

15        E.   Interference With Familial Association Under First and
              Fourteenth Amendments (Sixth and Seventh Claims)
16

17        Defendants request that the familial association claims

18   be dismissed, yet fail to present any argument aside from a

19   restatement of their Monell arguments. (See Mot. at 12.) The

20   Ninth Circuit has long recognized parental claims for

21   interference with familial association under both the First and

22   Fourteenth Amendments. See Wilkinson v. Torres, 610 F.3d 546,

23   554 (9th Cir. 2010); Lee v. City of Los Angeles, 250 F.3d 668,

24   685–86 (9th Cir. 2001).[2] Accordingly, the court will deny the

---

25        [2] See also Mann v. City of Sacramento, No. 21-15440, 2022
     WL 2128906, at *1 (9th Cir. June 14, 2022) (quoting Bd. of
26   Directors of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537
     (1987)) (in determining whether a familial association claim
27   exists, courts look to multiple aspects of the relationship,
     including (1) the size of the group, (2) purpose of the group,
28

1  motion dismiss the sixth and seventh claims for interference with

2  familial association against the Doe defendants.

3          F.   Unreasonable Post-Seizure Care Under Article I, Section
               13 of the California Constitution (Eighth Claim)

4

5          The California Supreme Court has not decided whether

6  there is a private cause of action for damages under Article I,

7  Section 13, which protects against unreasonable searches and

8  seizures.  See Julian v. Mission Cmty. Hosp., 11 Cal. App. 5th

9  360, 393 (2d. Dist. 2017).  To determine whether the California

10 Constitution provides for a private right of action, the court

11 must engage in the analysis set forth by the California Supreme

12 Court in Katzberg v. Regents of the University of California, 29

13 Cal. 4th 300, 317 (2002).

14         The Katzberg analysis employs a two-step approach.

15 First, the court must "inquire whether there is evidence from

16 which we may find or infer, within the constitutional provision

17 at issue, an affirmative intent either to authorize or to

18 withhold a damages action to remedy a violation."  See Katzberg,

19 29 Cal. 4th at 317.  In undertaking this inquiry, the court

20 "shall consider the language and history of the constitutional

21 provision at issue, including whether it contains guidelines,

22 mechanisms, or procedures implying a monetary remedy, as well as

23 any pertinent common law history."  See id.  If the court finds

24 any such intent, it shall give it effect.  See id.

25         Second, "if no affirmative intent either to authorize

26 or to withhold a damages remedy is found, the court shall

27 _____

28 (3) its selectivity, and (4) "whether others are excluded from
   critical aspects of the relationship").

undertake the 'constitutional tort' analysis adopted in <u>Bivens v.</u>
<u>Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388–398 (1971),
and its progeny." <u>See</u> <u>id.</u> "Among the relevant factors in this
analysis are whether an adequate remedy exists, the extent to
which a constitutional tort action would change established tort
law, and the nature and significance of the constitutional
provision." <u>See</u> <u>id.</u> If the court finds that the factors
militate against recognizing the constitutional tort, the inquiry
ends. <u>See</u> <u>id.</u> If the factors favor recognizing a constitutional
tort, the court shall also consider the existence of any special
factors counseling hesitation in recognizing a damages action,
including "deference to legislative judgment, avoidance of
adverse policy consequences, considerations of government fiscal
policy, practical issues of proof, and the competence of courts
to assess particular types of damages." <u>Id.</u>

   "Section 13 does not mention damages," and the court is
not aware of "any drafting history, ballot materials, historical
records, or common law decisions suggesting section 13 was
adopted with an intent to make damages available." <u>Rios v.</u>
<u>County of Sacramento</u>, 562 F. Supp. 3d 999, 1022-23 (E.D. Cal.
2021) (Mueller, J.); <u>see also</u> <u>Wigfall v. City & County of San</u>
<u>Francisco</u>, No. 06-cv-4968 VRW, 2007 WL 174434, at *5 (N.D. Cal.
Jan. 22, 2007) (analyzing plain language and legislative history
and finding an "absence of dispositive evidence concerning
intent" to create a damages remedy under § 13); <u>Manning v. City</u>
<u>of Rohnert Park</u>, No. 06-cv-03435 SBA, 2007 WL 1140434, at *1
(N.D. Cal. 2007) ("Neither the plain language of [] article I,
section 13, nor the available legislative history indicate an

1  intent on behalf of the California Legislature to permit the

2  recovery of monetary damages for its violation."); Leon v. City

3  Of Merced, No. 1:14-cv-01129 GEB, 2015 WL 135904, at *4 (E.D.

4  Cal. Jan. 9, 2015); Brown v. County of Kern, No. 1:06-CV-00121

5  OWW TAG, 2008 WL 544565, at *17 (E.D. Cal. Feb. 26, 2008).

6          Some courts have recognized a cause of action under §

7  13 based solely on dicta in Katzberg explaining that English

8  common law "'provided a damage remedy for the victims of unlawful

9  searches at common law.'"  See, e.g., Brewster v. City of Los

10  Angeles, No. 14-cv-2257 JGB SP, 2020 WL 5991621, at *15 (C.D.

11  Cal. July 14, 2020) (quoting Katzberg, 29 Cal. 4th at 322).  The

12  court does not find this general common law history to be

13  sufficient evidence of "affirmative intent" to create a private

14  cause of action, and therefore resort to the second step of the

15  Katzberg analysis is appropriate.  See Katzberg, 29 Cal. 4th at

16  317.

17          The second step of the analysis -- which incorporates

18  "Bivens and its progeny," see Katzberg, 29 Cal. 4th at 314 -- is

19  significantly simplified by the Supreme Court's recent decision

20  in Egbert v. Boule, 142 S. Ct. 1793 (2022).  The Egbert court

21  explained that since Bivens, Davis v. Passman, 442 U.S. 228

22  (1979), and Carlson v. Green, 446 U.S. 14 (1980), it has not

23  implied any additional causes of action under the Constitution,

24  despite multiple opportunities to do so, noting (1) the tension

25  between judicially created causes of action and the separation of

26  powers under the Constitution and (2) Congress' superior position

27  to consider the policy considerations of creating a cause of

28  action.  Given these concerns, "if there are sound reasons to

14

1   think [the legislative branch] might doubt the efficacy or

2   necessity of a damages remedy, the courts must refrain from

3   creating it."  Id. at 1802-03.  "'Even a single sound reason to

4   defer to [the legislature] is enough to require a court to

5   refrain from creating such a remedy,' and 'if there is a rational

6   reason to think that' the legislature should decide whether to

7   provide for a damages remedy, 'no Bivens action may lie.'"

8   Sheikh v. U.S. Dep't of Homeland Sec., No. 2:22-cv-00409 WBS AC,

9   2022 WL 16964105, at *3 (E.D. Cal. Nov. 16, 2022) (quoting

10  Egbert, 142 S. Ct. at 1802-03) (alterations adopted).

11          Here, there are clear reasons to defer creation of a

12  private cause of action under § 13 to the California Legislature.

13  In particular, the Legislature has already undertaken to provide

14  an alternative remedy for constitutional violations, including

15  violations of § 13 -- specifically, the Tom Bane Civil Rights

16  Act.  See Egbert, 142 S. Ct. at 1806 (existence of an alternative

17  legislatively-created remedy "foreclose[s]" the availability of a

18  judicially-created cause of action); Rios, 562 F. Supp. 3d at

19  1022-23 (availability of remedy under Tom Bane Act counsels

20  against recognizing cause of action under § 13); Brown, 2008 WL

21  544565, at *17 (same); Manning, 2007 WL 1140434, at *1 (same);

22  Astorga v. County of Los Angeles, No. 2:20-cv-09805 ABA GR, 2022

23  WL 3449810, at *4 (C.D. Cal. Feb. 9, 2022) (same); Rivera v.

24  County of San Diego, No. 16-cv-795 PSG KS, 2016 WL 10587937, at

25  *9 (C.D. Cal. Dec. 5, 2016) (same); Weimer v. County of Kern, No.

26  1:06-cv-00735 OWW DLB, 2006 WL 3834237, at *8 (E.D. Cal. Dec. 28,

27  2006) (same).

28          The court therefore concludes that no private cause of

1   action is available under Article I, Section 13.  Accordingly,

2   the court will grant the motion to dismiss the eighth claim under

3   the California Constitution.

4        G.    Tom Bane Act Civil Rights (Ninth Claim)

5             Defendants argue that plaintiffs have failed to allege

6   a specific intent to violate the plaintiff's rights, as required

7   to state a claim under the Tom Bane Act.  See Reese v. County of

8   Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing Cornell

9   v. City & County of S.F., 17 Cal. App. 5th 766, 801 (1st Dist.

10  2017)).  However, "specific intent" may be shown by demonstrating

11  that the officer "acted . . . 'in reckless disregard of

12  constitutional or statutory prohibitions or guarantees.'"  See

13  Cornell, 17 Cal. App. 5th at 803-04 (citation omitted); Reese,

14  888 F.3d at 1045 ("[A] reckless disregard for a person's

15  constitutional rights is evidence of a specific intent to deprive

16  that person of those rights.").

17            Here, plaintiffs' allegations that defendants impeded

18  access to urgent medical care are sufficient to establish

19  reckless disregard for purposes of a Tom Bane Act claim.  See

20  Galley v. County of Sacramento, No. 2:23-cv-00325 WBS AC, 2023 WL

21  4534205, at *5 (E.D. Cal. July 13, 2023) (allegations that

22  defendants deprived access to medical care are sufficient to

23  establish specific intent required for a Tom Bane Act claim).

24  Accordingly, the court will deny the motion to dismiss the ninth

25  claim under the Tom Bane Act.

26  IV.  Municipal Liability

27            Plaintiffs' first, second, third, sixth, and seventh

28  claims are § 1983 claims also brought against the County of Yuba

16

1   and the Yuba County Sheriff's Office.  In addition to the

2   arguments addressed above, defendants argue broadly that

3   plaintiffs have failed to state sufficient allegations to support

4   municipal liability under § 1983 against these defendants.

5        As § 1983 does not provide for vicarious liability,

6   local governments "may not be sued under § 1983 for an injury

7   inflicted solely by its employees or agents." Monell v. Dep't of

8   Soc. Servs. of N.Y., 436 U.S. 658, 693 (1978).  "Instead, it is

9   when execution of a government's policy or custom, whether made

10  by its lawmakers or by those whose edicts or acts may fairly be

11  said to represent official policy, inflicts the injury that the

12  government as an entity is responsible under § 1983."  Id.

13       To state a Monell claim, "a plaintiff must allege

14  either that (1) a particular municipal action itself violates

15  federal law, or directs an employee to do so; or (2) the

16  municipality, through inaction, failed to implement adequate

17  policies or procedures to safeguard its community members'

18  federally protected rights." Hyun Ju Park v. City & County of

19  Honolulu, 952 F.3d 1136, 1141 (9th Cir. 2020) (internal quotation

20  marks omitted).

21       Plaintiffs advance two theories of Monell liability:

22  first, that defendants' official written transport policy led to

23  the alleged constitutional violations; and second, that

24  defendants' failure to provide adequate policies and training led

25  to the alleged constitutional violations.

26       A.   Written Policy

27       Plaintiffs point to Yuba County Sheriff's Office Policy

28  430.4 concerning the transport of ill and injured persons.  The

17

1  policy provides that officers "should not transport persons who

2  are unconscious, who have serious injuries or who may be

3  seriously ill," and instead "EMS personnel should be called to

4  handle patient transportation." (Compl. ¶ 46.) The policy also

5  provides that "members should not provide emergency escort for

6  medical transport or civilian vehicles." (Id.)

7        Plaintiffs argue that because the officers' actions

8  were consistent with this policy, the policy is responsible for

9  their allegedly unconstitutional conduct. However, plaintiffs'

10  claims are not premised on the officers' refusal to transport

11  F.R. or provide an escort for a civilian vehicle; rather,

12  plaintiffs take issue with the officers' refusal to allow F.R. to

13  be taken to the hospital in a civilian vehicle. This scenario

14  falls outside the scope of the transport policy. It makes little

15  sense to argue that the policy -- which does not apply to the

16  events at issue -- is directly responsible for the alleged

17  constitutional violations. Plaintiffs have therefore failed to

18  state Monell claims premised on the written transport policy.

19        B.   Failure to Train

20        In order to state a claim for failure to train under

21  Monell, a plaintiff must allege that: (1) the existing training

22  program is inadequate in relation to the tasks the particular

23  officers must perform; (2) the officials have been deliberately

24  indifferent to the rights of the persons with whom the police

25  come into contact; and (3) the inadequacy of the training

26  "actually caused the deprivation of the alleged constitutional

27  right." See Merritt v. County of Los Angeles, 875 F.2d 765, 770

28  (9th Cir. 1989). The deliberate indifference standard is met

1    when "the need for more or different training is so obvious, and

2    the inadequacy so likely to result in the violation of

3    constitutional rights, that the policymakers of the city can

4    reasonably be said to have been deliberately indifferent to the

5    need."  City of Canton v. Harris, 489 U.S. 378, 390 (1989).

6           "A pattern of similar constitutional violations by

7    untrained employees is 'ordinarily necessary' to demonstrate

8    deliberate indifference for purposes of failure to train."

9    Connick v. Thompson, 563 U.S. 51, 62 (2011) (internal citations

10   omitted).  However, "[a] plaintiff . . . might succeed in proving

11   a failure-to-train claim without showing a pattern of

12   constitutional violations where 'a violation of federal rights

13   may be a highly predictable consequence of a failure to equip law

14   enforcement officers with specific tools to handle recurring

15   situations.'"  Long v. County of Los Angeles, 442 F.3d 1178, 1186

16   (9th Cir. 2006) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S.

17   397, 409 (1997)).

18          Here, plaintiffs have not alleged any pattern of

19   similar constitutional violations, nor have they provided any

20   other factual allegations suggesting deliberate indifference.

21   The complaint generically states that the municipal defendants

22   "were or should have been on notice" regarding the inadequacy of

23   their policies or training "because the inadequacies of the

24   policies, procedures, and training constituted life-threatening

25   decisions and were so obvious and likely to result in the

26   violation of rights of persons coming into contact with

27   officials."  (Compl. ¶ 52.)  There are no underlying factual

28   allegations that support this conclusion.  As a result,

1  plaintiffs have failed to state a <u>Monell</u> claim based on failure

2  to train.  <u>See</u> <u>Via v. City of Fairfield</u>, 833 F. Supp. 2d 1189,

3  1196 (E.D. Cal. 2011) (Shubb, J.) ("Since <u>Iqbal</u>, courts have

4  repeatedly rejected . . . conclusory allegations that lack

5  factual content from which one could plausibly infer <u>Monell</u>

6  liability.") (collecting cases).

7       Having concluded that plaintiffs have failed to state

8  claims for <u>Monell</u> liability premised on either the transport

9  policy or a failure to train, the court will grant the motion to

10 dismiss the first, second, third, sixth, and seventh claims only

11 as against the municipal defendants.

12 V.    <u>Remaining State Law Claims</u>

13      A.    <u>IIED</u> (Tenth Claim)

14      To state a claim for intentional inflection of emotion

15 distress ("IIED"), a plaintiff must allege: "(1) extreme and

16 outrageous conduct by the defendant with the intention of

17 causing, or reckless disregard of the probability of causing,

18 emotional distress; (2) the plaintiff's suffering severe or

19 extreme emotional distress; and (3) actual and proximate

20 causation of the emotional distress by the defendant's outrageous

21 conduct."  <u>Potter v. Firestone Tire & Rubber Co.</u>, 6 Cal. 4th 965,

22 1001 (1993); <u>Avila v. Willits Env't Remediation Tr.</u>, 633 F.3d

23 828, 844 (9th Cir. 2011) (same).  "Conduct is 'extreme and

24 outrageous' when it is 'so extreme as to exceed all bounds of

25 that usually tolerated in a civilized community."  <u>Robles v.</u>

26 <u>Agreserves, Inc.</u>, 158 F. Supp. 3d 952, 978 (E.D. Cal. 2016)

27 (Ishii, J.) (quoting <u>Hughes v. Pair</u>, 46 Cal. 4th 1035, 1050

28 (2009); <u>Potter v. Firestone Tire & Rubber Co.</u>, 6 Cal. 4th 965,

1   1001 (1993)).  See also Crouch v. Trinity Christian Cent. of

2   Santa Ana, Inc., 39 Cal. App. 5th 995, 1007 (4th Dist. 2019)

3   ("Generally, the case is one in which the recitation of the facts

4   to an average member of the community would arouse his resentment

5   against the actor, and lead him to exclaim, 'Outrageous!'").

6           Defendants argue that plaintiffs fail to allege

7   sufficiently extreme and outrageous conduct, yet cite no

8   authority suggesting that preventing a parent from rendering aid

9   to her child who is suffering from a gunshot wound is, as a

10  matter of law, not "outrageous."  Whether defendants' conduct was

11  sufficiently "outrageous" to support a claim for IIED is a

12  question of fact, and therefore inappropriate for resolution at

13  the motion to dismiss stage.  See Gonero v. Union Pac. R. Co.,

14  No. 2:09-cv-2009 WBS JFM, 2009 WL 3378987, at *10 (E.D. Cal. Oct.

15  19, 2009).  Accordingly, the court will deny the motion to

16  dismiss plaintiff's tenth claim for IIED.

17          B.   Negligence (Eleventh Claim)

18          "The elements of a negligence cause of action are: (1)

19  a legal duty to use due care; (2) a breach of such legal duty;

20  (3) the breach was the proximate or legal cause of the resulting

21  injury; and (4) actual loss or damage resulting from the breach

22  of the duty of care."  Megargee v. Wittman, 550 F. Supp. 2d 1190,

23  1209 (E.D. Cal. 2008) (O'Neill, J.).

24          1.   F.R.

25          Defendants argue that no duty was owed to F.R.  While

26  the California Supreme Court has not opined on the matter, the

27  Ninth Circuit has concluded that California law likely imposes a

28  duty of care upon a law enforcement officer with respect to an

21

1    individual "in his custody in need of immediate medical

2    attention."  See Frausto v. Dep't of Cal. Highway Patrol, 53 Cal.

3    App. 5th 973, 993 (1st Dist. 2020) (citing Winger v. City of

4    Garden Grove, 806 F. App'x 544, 546 (9th Cir. 2020)).  Plaintiffs

5    allege that the F.R. was in custody and in need of urgent medical

6    attention.  (See Compl. ¶¶ 17, 28, 31.)  The court therefore

7    concludes that plaintiffs have sufficiently alleged that

8    defendants owed F.R. a duty of care.

9                   2.  Lori Rosiles

10          Ms. Rosiles relies on the "bystander" theory of

11   negligent infliction of emotional distress.  To state such a

12   claim, Ms. Rosiles must allege, inter alia, that she "'was

13   present at the scene of the injury producing event at the time it

14   occurred and was then aware that it was causing injury to the

15   victim."  See Martin v. Cal. Dep't of Veterans Affs., 560 F.3d

16   1042, 1051 (9th Cir. 2009) (quoting Thing v. La Chusa, 48 Cal.3d

17   644, 257 (1989)) (alterations adopted).  See also Mandel v.

18   Hafermann, 503 F. Supp. 3d 946, 983 (N.D. Cal. 2020) ("Under

19   California law, [negligent infliction of emotional distress] 'is

20   not an independent tort,' but an articulation of a general

21   negligence claim.") (quoting Christensen v. Superior Ct., 54 Cal.

22   3d 868, 894 (1991)).

23          Here, plaintiffs allege that Ms. Rosiles arrived home

24   during the incident but, like F.R.'s other relatives, was

25   prevented from rendering aid to F.R.  (See Compl. ¶ 34.)  Based

26   on the allegations of the complaint, it seems all but certain

27   that Ms. Rosiles was aware of F.R.'s medical situation and the

28   alleged harm being done by the officers present.  (See id. ¶ 28

                                  22

1   (F.R.'s relatives "pleaded with Defendants . . . to move the

2   patrol vehicles and permit [F.R.] to be transported to the

3   hospital"); id. ¶ 34 (Ms. Rosiles "was prevented by Defendants .

4   . . from coming near where [F.R.] was lying on the ground").  The

5   complaint thus sufficiently alleges that Ms. Rosiles "was present

6   at the scene of the injury producing event at the time it

7   occurred and was then aware that it was causing injury to the

8   victim."  See Martin, 560 F.3d at 1051.  The court therefore

9   concludes that Lori Rosiles has stated a claim for negligence.

10         Having concluded that both plaintiffs have stated

11  negligence claims, the court will deny the motion to dismiss the

12  eleventh claim for negligence.

13         C.   Wrongful Death (Twelfth Claim)

14         "'The elements of the cause of action for wrongful

15  death [under California Code of Civil Procedure § 377.60] are the

16  tort (negligence or other wrongful act), the resulting death, and

17  the damages, consisting of the pecuniary loss suffered by the

18  heirs.'"  Deloney v. County of Fresno, No. 1:17-cv-01336 LJO EPG,

19  2019 WL 1875588, at *9 (E.D. Cal. Apr. 26, 2019) (citing Quiroz

20  v. Seventh Ave. Center, 140 Cal. App. 4th 1256, 1263 (6th Dist.

21  2006)).  Defendants argue only that because plaintiffs have

22  failed to state a claim for negligence, the wrongful death claim

23  -- purportedly predicated on the negligence claim -- must also

24  fail.  However, as the court already found, plaintiffs have

25  stated a claim for negligence.  Accordingly, the court will deny

26  the motion to dismiss the twelfth claim for wrongful death.

27         IT IS THEREFORE ORDERED that defendants' motion to

28  dismiss (Docket No. 7) be, and the same hereby is, GRANTED IN

1   PART as follows.  The fourth claim under the Rehabilitation Act,

2   the fifth claim under the Americans with Disabilities Act, and

3   the eighth claim under the California Constitution are DISMISSED

4   in their entirety.  The first claim under the state-created

5   danger rule, second claim under the special relationship

6   exception, third claim under the Fourth Amendment, sixth claim

7   for interference with familial association under the Fourteenth

8   Amendment, and seventh claim for interference with familial

9   association under the First Amendment are DISMISSED only as

10  against the County of Yuba and Yuba County Sheriff's Office.  The

11  motion is DENIED in all other respects.  If plaintiffs are not

12  satisfied to move forward in this action on their nine remaining

13  claims, they are given twenty days from the date of this Order to

14  file an amended complaint, provided they can do so consistent

15  with this Order.

16  Dated:  September 19, 2023

    WILLIAM B. SHUBB
17  UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

24